UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| LOUIS ALLAN CHADES,<br><br>                Plaintiff,<br><br>    v.<br><br>DAMON ZAVALA, *et al.*,<br><br>                Defendants. | Case No. 3:24-CV-00117-CLB[1]<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>[ECF No. 40] |

Before the Court is Defendants Damon Zavala's ("Dr. Zavala") and Kathleen Henderson's ("Nurse Henderson") (collectively "Defendants") Motion for Summary Judgment. (ECF No. 40.) Plaintiff Louis Allan Chades ("Chades") opposed the motion, (ECF No. 42), and Defendants replied, (ECF No. 43). For the foregoing reasons, Defendants' motion for summary judgment, (ECF No. 40), is granted.

**I.    BACKGROUND**[2]

During the relevant events of this case, Chades was a pretrial detainee at Lyon County Detention Center ("LCDC"). (ECF No. 1.) LCDC contracts with Recon Technologies to provide medical care services to detainees. (*Id.*) Dr. Zavala is the Director of Medical Services for Recon at LCDC and Nurse Henderson and Nurse Cassandra Peat ("Nurse Peat") are registered nurses employed by Recon at LCDC. (*Id.*)

On March 27, 2023, Chades complained of swelling in his lower extremities, primarily in his feet and ankles. On March 31, 2023, the swelling had increased and Chades's right leg was turning a shade of purple. Dr. Zavala was notified of the swelling and ordered an immediate sonogram which took place on March 31, 2025. (ECF No. 40 at Ex. 3.) The sonogram showed no concerns of blood clots in Chades's lower extremities.

---

[1]    The parties consented to the undersigned's jurisdiction to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C.§ 636(c) and Federal Rule of Civil Procedure 73. (*See* ECF No. 35.)

[2]    Except where otherwise noted, the following facts are collected from the exhibits filed by the parties and are undisputed for purposes of this order.

(*Id.*) Dr. Zavala directed the nurses to provide Chades with a compression sock and told Chades to elevate his feet and legs as much as possible along with ankle exercises to promote blood flow. (ECF No. 40 at 5.)

Chades's complaints related to his lower extremities continued through April 10, 2023. Dr. Zavala ordered a transthoracic echocardiogram. (ECF No. 40 at Ex. 4.) Both the sonogram and echocardiogram took place at South Lyon Medical Center. The echocardiogram showed no concerns of heart failure and that Chades's heart was within normal function. (*Id.*)

Chades was informed of the echocardiogram results by Nurse Henderson. Nurse Henderson states she was qualified to inform Chades of the test results following her conversation with Dr. Zavala. (ECF No. 40 at Ex. 7.) Chades asserts Nurse Henderson further recommended Chades see a cardiologist following his release for broader and long-term heart care related to "leaky valves." (ECF No. 1-1 at 3.) Chades further asserts that on April 20, 2023, he was told by Nurse Peat that he was suffering from congestive heart failure. (*Id.*) Nurse Peat refutes Chades's allegations. (ECF No. 40 at 9.)

Chades was seen virtually by Dr. Zavala on May 3, 2023. (ECF No. 40 at 5.) Dr. Zavala discussed the test results with Chades and explained his diagnosis of chronic venous insufficiency. Dr. Zavala states chronic venous insufficiency is "having weak or . . . 'leaky valves'" which means the "veins do not allow all the blood pumped to the lower extremities to return to the heart." (*Id.*) Dr. Zavala told Chades to continue the treatment as well as his medications. (*Id.*) Chades was taking Amlodipne for high blood pressure, medication he was taking prior to the events of this case. (*Id.*) Dr. Zavala also prescribed Hydrochlorothiazide, a diuretic prescribed specially to address the swelling in Chades's lower extremities. (*Id.*) Chades does not argue that he was never provided the medication and treatment plans by Defendants.

Chades met with Dr. Zavala in-person on September 19, 2023. (ECF No. 40 at 6.) Dr. Zavala states during the September 19, 2023 visit, he continued to tell Chades he did not have congestive heart failure or any other significant issue with his heart. (*Id.*) Dr.

Zavala refutes Chades's assertion that Dr. Zavala stated he "had the heart of a UFC fighter." (*Id.*)

On March 13, 2024, Chades initiated suit against Dr. Zavala, Nurse Peat, and Nurse Henderson under the Sixth, Eight, and Fourteenth Amendments. (ECF No. 1-1.) Chades seeks damages for irreversible harm done to his feet from the swelling and for Defendants failure to prevent a fatal heart attack. (*Id.*)

On April 26, 2024, the Court entered a Screening Order. (ECF No. 5.) The Court dismissed Chades's Sixth and Eighth Amendment claims. (*Id*) The Court also dismissed Nurse Peat from the case for failure to state a colorable claim. (*Id.*). The Court permitted Chades's Fourteenth Amendment claim of inadequate medical care of a pretrial detainee to continue against Dr. Zavala and Nurse Henderson. (*Id.*)

On January 27, 2025, Defendants filed their motion for summary judgment. (ECF No. 40.) On February 7, 2025, Chades opposed Defendants' motion. (ECF No. 42.) On February 19, 2025, Defendants replied. (ECF No. 43.)

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim or claims determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine

dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Id.* However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23. Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

An opposing party's failure to respond to a fact asserted in the motion permits a court to "consider the fact undisputed for purposes of the motion." *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013) (citing Fed. R. Civ. P. 56(e)(2)). The Advisory Committee Notes explains that "[c]onsidering some facts undisputed does not of itself allow summary judgment. If there is a proper response or reply as to some facts, the court cannot grant summary judgment without determining whether those facts can be genuinely disputed." Fed. R. Civ. P. 56 Advisory Committee Notes (2010).

### III.  DISCUSSION

Defendants argue they are entitled to summary judgment on Chades's claim of inadequate medical care under the Fourteenth Amendment because Chades cannot establish the existence of a genuine issue of a material fact as to any element. (ECF No. 40 at 11.) In his Complaint, Chades alleges he received inadequate medical care by Defendants because they failed to adequately address the swelling he was experiencing in his lower extremities as a pretrial detainee. (ECF No. 5.)

"[C]laims for violations of the right to adequate medical care 'brought by pretrial detainees against individual defendants under the Fourteenth Amendment' must be evaluated under an objective deliberate indifference standard." *See Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018) (quoting *Castro v. Cnty. of Los Angeles*, 833 F.3d 1067-68 (9th Cir. 2016)). Accordingly, a pretrial detainee plaintiff must meet the following elements to prevail on a claim of inadequate medical care under the due process clause of the Fourteenth Amendment:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
> (ii) those conditions put the plaintiff at substantial risk of suffering serious harm;
> (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
> (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 1125. "'With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case.'" *Id.* (quoting *Castro*, 833 F.3d at 1071). "The mere lack of due care by a state official does not deprive an individual of life, liberty or property under the Fourteenth Amendment." *Id.* (internal quotation marks omitted). The "plaintiff must 'prove more than negligence but less than subjective intent—something akin to reckless disregard.'" *Id.* (quoting *Castro*, 833 F.3d at 1071).

Because Chades was a pretrial detainee at the time of his alleged injury, his § 1983 claim against Defendants arises under the Due Process Clause of the Fourteenth Amendment. *See Gordon*, 888 F.3d at 1124. The elements of *Gordon* will be addressed in turn.

   1.   **Intentional Decision**

In their motion, Defendants have presented evidence that they did not make intentional decisions to harm Chades. Defendants have provided significant evidence detailing their actions following Chades reports of swelling in his lower extremities. (ECF No. 40 at 16; Exs. 3, 4, & 5.) When Chades was admitted for care, Dr, Zavala ordered an urgent sonogram, which took place the same day. (ECF No. 40 at Ex. 3.) Dr Zavala reviewed the results the same day and concluded that there were no blood clots affecting Chades's health. (*Id.*) When Chades's reports of swelling continued, Dr. Zavala also ordered an echocardiogram which ruled out any concern of heart failure. (ECF No. 40 at Ex. 4.) Dr. Zavala concluded and directly provided Chades with a diagnosis of "chronic venous insufficiency" and created a treatment plan. (ECF No. 40 at Ex. 5.) Chades was prescribed additional medication and given compression stockings and directed to elevate and stretch his feet and legs to increase the blood flow to his lower extremities. (*Id.*) Defendants also note that even if the conversations that Chades had with Nurses Peat and Henderson in-fact took place, none of them were done with an intent to deceive or harm Chades. In summary, Defendants immediately conducted multiple tests following Chades's complaints of swelling, concluded a diagnosis, and prescribed treatment. The

1  Court agrees with Defendants that the actions taken by Defendants were reasonable and
2  were for Chades's "best interests." (ECF No. 40 at 14.)

3  Based on the Court's review of the record, the Court finds Defendants have
4  presented sufficient evidence and met their burden to show that intentional actions were
5  not taken to harm Chades. The burden now shifts to Chades to come forward with some
6  evidence to create an issue of fact on this element. To meet this burden, Chades must
7  present evidence of intentional actions taken by Defendants to cause harm.

8  In his opposition, Chades argues this element is satisfied when Nurse Henderson
9  suggest he see a doctor for follow-up care one he was released from custody. (ECF No.
10 42 at 8-9.) Chades also asserts that Defendants did nothing further than the treatment
11 plan and that it took an additional five months to be seen by Dr. Zavala. (*Id.*)

12 The Court cannot find a dispute of this element when looking at the entirety of the
13 record. Chades does not provide evidence, other than his own assertion, that the
14 statement by Nurse Henderson indeed took place and that the statement was done
15 intentionally to avoid or delay treatment. Furthermore, as Defendants note, Chades was
16 given a treatment plan and continued to receive medication and directions to elevate and
17 stretch his lower extremities. (ECF No. 43 at 3-4.) Per Chades's own exhibits, Nurse
18 Henderson states, in her own opinion, that not seeing one's physician for five months is
19 not unreasonable. (ECF No. 42 at Ex. 5.) Other than an objection, Chades has not provide
20 any evidence to counter Nurse Henderson's statement and show that Defendants
21 intentionally avoided seeing and treating Chades. *See Surrell v. California Water Serv.*
22 *Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008) ("Conclusory statements without factual support
23 are insufficient to defeat a motion for summary judgment.")

24 The Court cannot conclude that Defendants intentionally delayed treatment or
25 otherwise intentionally acted to harm Chades. *See Cravotta v. Cnty of Sacramento* 717
26 F.Supp.3d 941, 954 (E.D. Cal February 15, 2024). The fact that Chades was seen, given
27 tests, diagnosed, and treated does not lead to a conclusion of negligence, let alone
28 reckless conduct. *See Gordon*, 888 F.3d at 1124,

The Court finds Chades has not met his burden on summary judgment and thus cannot establish the first element of his inadequate medical care claim under the Due Process Clause of the Fourteenth Amendment.

### 2. Substantial Risk of Suffering Serious Harm

Next, Defendants have submitted evidence to show Chades was not exposed to a substantial risk of serious harm. As discussed above, once Chades reported swelling in his lower extremities, Defendants conducted multiple tests, diagnosed him with a condition, and accordingly created a treatment plan for the diagnosis. (ECF No. 40, Exs. 3, 4, & 5.) Defendants note there is no evidence of a failure to treat Chades but clear evidence of legitimate and adequate treatment. (ECF No. 40 at 14-15.)

Furthermore, Defendants provide evidence to show that any concerns of a wrong diagnosis or overstep in authority by Nurses Peat and Henderson did not place Chades at a substantial risk of serious harm. Chades was never subject to improper treatment for a condition that was neither officially diagnosed nor treated for. Conduct by Nurse Peat and Henderson in relaying information about conditions did not place Chades at a substantial risk of serious harm. *See Corniel v. Naphcare*, No. 3:18-CV-00157-MMD-WGC, 2020 WL 3053373, at *6 (D. Nev. May 20, 2020), *report and recommendation adopted*, No. 3:18-CV-00157-MMD-WGC, 2020 WL 3047749 (D. Nev. June 8, 2020), *aff'd sub nom. Corniel v. Candace*, 851 F. App'x 82 (9th Cir. 2021).

The Court finds Defendants have presented sufficient evidence and met their burden to show that Chades was not subject to a substantial risk of serious harm as a result of Defendants actions. The burden now shifts to Chades to come forward with some evidence to create an issue of fact on this element. Chades must present evidence to show that he was subject to a substantial risk of serious harm.

Chades argues that Defendants failure to do anything other than give him a compression sock and recommend he a see doctor upon release put his him at a substantial risk of serious harm. (ECF No. 42 at 5-6.) He further asserts that he was at a risk of harm because Dr. Zavala did not see him in person for five months. (*Id.*)

The Courts finds these barebones statements to be insufficient to satisfy Chades's burden. Chades has not provided evidence that Defendants' diagnostic measures and treatment plan put him in harms way. Chades's statements ignore the entire medical record which shows he received prompt and thorough medical testing, received a diagnosis and a treatment plan, and Dr. Zavala oversaw his care from the beginning. (ECF No. 40 at Exs. 3-5.) Chades was in a better position after receiving "quality medical treatment" from Defendants and thus was not subject to a substantial risk of serious harm. (ECF No. 43 at 10.) There is no evidence of negligence here, let alone reckless conduct, when Chades was treated for the exact issue he complained of. *See Shorter v. City of Las Vegas*, No. 2:16-CV-00971-KJD-CWH, 2019 WL 266284, at *4 (D. Nev. Jan. 17, 2019) (finding a substantial risk of harm when Nurses failed to treat the pretrial detainee in a timely manner).

Accordingly, the Court finds Chades has not met his burden on summary judgment and thus cannot establish the second element of his inadequate medical care claim under the Due Process Clause of the Fourteenth Amendment.

### 3. **Failure to Take Reasonable Available Measures**

Next, Defendants have submitted evidence to show they did not fail to take reasonable available measures when they provided medical care to Chades. (ECF No. 40 at 15-16.) Under *Gordon*, Defendants were required to take reasonable available measures when providing medical care and treating Chades. 888 F.3d at 1125. Any failure to take reasonable measures must have been objectively unreasonable based on the facts and circumstances of this case. *See id.*

Defendants provide significant evidence as to the medical care Chades received when he complained of swelling in his lower extremities. As shown in the record, Dr. Zavala ordered multiple tests to determine the cause of the swelling and if there were any underlying heart issues. (ECF No. 40 at 16; Exs. 3, 4, & 5.) The tests led to the ultimate diagnosis of chronic venous insufficiency. (*Id.*) Defendants provide further evidence that following the diagnosis, Dr. Zavala created a treatment plan of medication, compression

socks, and exercises to address the symptoms of swelling. (ECF No. 40 at Ex. 5.) The evidence shows Defendants conducted the tests, determined a diagnosis, and created a treatment plan in a prompt and thorough manner. (ECF No. 40 at 16; Exs. 3, 4, & 5.)

The Court finds Defendants have presented sufficient evidence and met their burden to show that Defendants did not fail to take reasonable measures. The burden now shifts to Chades to come forward with some evidence to create an issue of fact on this element. Chades must present evidence to show that Defendants failure to take reasonable measures was objectively unreasonable. *See Gordon*, 888 F.3d at 1125.

On this element, Chades focuses his argument on his disagreement with Dr. Zavala's diagnostic and treatment approach. (ECF No. 42 at 6.) He argues Dr. Zavala should have sent Chades to see a cardiologist to rule out heart conditions. (*Id.*) Chades further asserts that because Dr. Zavala did not see Chades for another five months, the Defendants conduct was obviously unreasonable and put his life at risk. (*Id.* 6-7.) However, Chades provides no evidence to back-up his assertions. Chades references medical opinions from a Dr. Sloves for the proposition that "there was was no way for Defendant Dr. Zavala to determine anything other than what he checked for, 'blood clots.'" (*Id at* 2-3.) As Defendants aptly point out, other than statements in his Opposition, Chades failed to disclose Dr. Sloves as an expert witness, let alone any affidavit, declaration, or sworn testimony that Dr. Sloves is setting forth such opinion. (ECF No. 43 at 5-6.) Because there is no basis of admissibility of Dr. Sloves asserted statements, the Court cannot permit their reliance to support Chades's arguments to create a genuine dispute. *See Goodman v. Staples the Office Superstore LLC*, 644 F.3d 817, 826 (9th Cir. 2011).

Even if Chades's assertions of alternative medical actions were legitimate, which the Court does not find, he raises nothing more than a difference of medical opinion as to what is the best form of care to address swelling in one's lower extremities. As the Ninth Circuit has consistently held, "'a mere difference of medical opinion is insufficient, as a matter of law, to establish deliberate indifference.'" *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 642 (9th Cir. 2021) (quoting *Toguchi v. Chung*, 391 F.3d 1050, 1057

(9th Cir. 2004)). "A difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir.2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014) (en banc); *see Edmo v. Corizon, Inc.*, 935 F.3d 757, 786 (9th Cir. 2019). The inmate must show the defendant's actions were "'medically unacceptable under the circumstances.'" *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 671 (9th Cir. 2021) (quoting *Toguchi*, 391 F.3d at 1058). Chades's disagreement with Defendants medical decisions is not a basis for the Court to find that Defendants failed to take reasonable measures.

Furthermore, Chades has not come forward with even a scintilla of evidence to suggest that Defendants improperly diagnosed Chades or missed a heart condition. *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000) ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact.") Without more, the Court cannot conclude Defendants failed to take reasonable measures that led to a misdiagnosis and untreated conditions.

The Court cannot conclude Defendants failed to take reasonable measures and that their failure was objectively reasonable when Defendants promptly conducted multiple tests, confirmed a diagnosis, and treated Chades for the swelling of his lower extremities. Defendants' actions demonstrate quality medical care, not negligence, let alone reckless conduct.

The Court finds Chades has not met his burden on summary judgment and thus cannot establish the third element of his inadequate medical care claim under the Due Process Clause of the Fourteenth Amendment.

### 4. Injury

Finally, with respect to the fourth element of Chades's inadequate medical care claim, Defendants have submitted sufficient evidence to show Chades has not suffered an injury based on the care provided by Defendants. (ECF No. 30 at 16.) Defendants

provide medical records concerning Chades's visits and tests and supporting affidavits. (ECF No. 40, Exs. 3-9.) As discussed above, the records show that Defendants provided sufficient care to Chades by running multiple tests, diagnosing him, and providing a treatment plan. (*Id.*) The records do not show that Chades's condition worsened or that the treatment plans worsened the swelling of his lower extremities. Defendants also note that none of the actions taken by Nurse Peat or Nurse Henderson resulted in an actual harm to Chades. (ECF No. 40 at 14-15.) Defendants have met their burden on summary judgment by demonstrating that Chades did not suffer an injury as a result from Defendants' actions.

The burden now shifts to Chades to come forward with some evidence to create an issue of fact on this element. Chades must present evidence of an actual injury. *See Allen v. Bosley*, 253 F. App'x 658, 660 (9th Cir. 2007).

In his opposition, Chades asserts that because of Defendants actions, his swelling "continued to grow worse" and that he suffers "permanently discolored dark brown around [his] ankles and the top of [his] feet." (ECF No. 42 at 7, 9.) He further asserts that the permanent damages he now allegedly suffers resulted from the Defendants "failure to address [his] medical needs." (*Id.* at 9.)

As Defendants aptly point out in their reply, "there are no photographs or evidence that would verify Plaintiff's claim as to the present condition of his feet and ankles" or that the discoloration was present "prior to his incarceration at Lyon." (ECF No. 43 at 6.) No admissible evidence was provided by Chades regarding the alleged harm. Without more, Chades's assertions in his Opposition are hearsay and insufficient to create a genuine dispute. "'To defeat summary judgment, [the non-movant] must respond with more than mere hearsay and legal conclusions.'" *Abalos v. Parham*, No. 22-16250, 2024 WL 5200169, at *1 (9th Cir. Dec. 23, 2024) (quoting *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002)). Chades's conclusory statements alone are insufficient to defeat the Defendants motion for summary judgment. *See Surrell*, 518 F.3d at 1103 ("Conclusory statements without factual support are insufficient to defeat a motion for

summary judgment.") Without any authenticated and admissible evidence of an actual harm, Chades's cannot show Defendants' actions, even if unreasonable, caused an injury he now suffers.

The Court finds Chades has not met his burden on summary judgment and thus cannot establish the fourth element of his inadequate medical care claim under the Due Process Clause of the Fourteenth Amendment.

For the reasons stated above, the Court grants Defendants' motion for summary judgment in its entirety.

### IV.  CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' motion for summary judgment, (ECF No. 40), is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk **ENTER JUDGMENT** and **CLOSE THIS CASE**.

DATED: April 7, 2025.

_____
**UNITED STATES MAGISTRATE JUDGE**